UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUZ MARIA TAMAMI QUITIO,<br><br>Petitioner(s),<br>v.<br><br>WARDEN, NORTHWEST ICE PROCESSING CENTER, et al.,<br><br>Respondent(s). | CASE NO. C26-2118-KKE<br><br>ORDER ON HABEAS PETITION |

Petitioner was arrested in May 2026 and has been in immigration detention since then. Dkt. No. 8 ¶ 11. She filed a petition for writ of habeas corpus under 28 U.SC. § 2241. Dkt. No. 1. Petitioner argues that the Government[1] violated her constitutional right to procedural due process by arresting her without her an opportunity to contest her re-detention in a hearing before a neutral decision maker. *Id.* at 7. The Court agrees and will therefore grant the petition in part and order that Petitioner receive a bond hearing.

## I. BACKGROUND

Petitioner is a citizen of Ecuador who entered the United States in September 2023. Dkt. No. 8 ¶ 3. She was detained immediately upon entry but released the next day. *Id.* ¶¶ 4–5. Petitioner was issued a notice to appear and released on an order of recognizance ("OREC"). *Id.*

[1] This order refers to all Respondents except the Warden of the Northwest ICE Processing Center collectively as "the Government."

She applied for asylum in August 2024, obtained work authorization, and has been employed in the United States for approximately three years in the construction industry. Dkt. No. 1 ¶¶ 3–5.

On February 21, 2026, Petitioner was arrested in West Valley City, Utah for misdemeanor assault arising out of a domestic dispute with her former intimate partner. Dkt. No. 9-4 at 5. Petitioner pled guilty to the charge and was sentenced to 45 days in jail with credit for time served. *Id.* at 2–3. The judge ordered her released the same day. *Id.* at 3.

On May 23, 2026, Immigration and Customs Enforcement ("ICE") arrested Petitioner upon her release from jail and transferred her between several facilities before ultimately transferring her to the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 8 ¶ 11. According to ICE, Petitioner has not requested a bond hearing. *Id.* ¶ 15. Although Petitioner was ordered removed in absentia while detained in county jail, the immigration court has since, at the Government's request, reopened her removal proceedings, which remain pending. *Id.* ¶¶ 10, 12, 14.

In June 2026, Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus, contending, among other things, that her re-detention violated due process because she was not given a hearing before a neutral decision maker prior to being arrested. Dkt. No. 1. For the following reasons, the Court grants the habeas petition in part.

## II. DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that her arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all

'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). While Petitioner applies the *Mathews* test in her petition (Dkt. No. 1 ¶ 4), the Government fails to respond and instead rests on its argument that Petitioner is mandatorily detained under 8 U.S.C.§ 1225(b)(2) (Dkt. No. 7 at 6–7). The Court disagrees that § 1225(b)(2) provides the applicable detention authority and instead applies the *Mathews* factors to determine whether Petitioner's re-detention complied with due process.

**A. Petitioner Was Detained Under 8 U.S.C. § 1226(a).**

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing Petitioner's detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can

affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government argues that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission to the United States. Dkt. No. 7 at 6–7. The Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include Petitioner. Petitioner's status as a person previously released with conditions, and who has been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section

1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a).[2]

**B. Petitioner Has a Protected Interest in His Liberty.**

Turning to the first *Mathews* factor, Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner's arrest and transfer to a facility in a different state, after she has lived and worked in the community for years, undoubtedly deprived her of an established interest in her liberty. "When [Petitioner] was released from [her] initial detention…, Petitioner took with [her] a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)).

To the extent the Government addresses Petitioner's liberty interest, it suggests that she has none because Petitioner is subject to mandatory detention under Section 1225 (which the Court has already rejected) and because she has been convicted of a crime in violation of her OREC. Dkt. No. 7 at 6–7. But the fact that the Government believes it has a valid basis for revoking Petitioner's OREC does not "obviate the need for the Government to provide [an] individualized hearing" to allow Petitioner to challenge the reasons for her re-detention "prior to re-detaining"

[2] Moreover, Petitioner's OREC confirm that Petitioner's arrest and subsequent release on recognizance was "[i]n accordance with [Section 1226]"–*not* Section 1225(b). Dkt. No. 9-3 at 2; *see also* Dkt. No. 9-2 at 2 (charging Petitioner as "an alien present in the United States who has not been admitted or paroled" and *not* as "an arriving alien").

her. *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)).

Accordingly, the first *Mathews* factor favors Petitioner.

**C. The Risk of Erroneous Deprivation of Liberty is Moderately High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. Here, the Court finds that the risk of erroneous deprivation in the absence of a pre-detention hearing is moderately high, though less severe in light of Petitioner's conviction.

Again, the Government relies entirely on its argument, rejected above, that Petitioner's re-detention was statutorily required under Section 1225(b). Dkt. No. 7 at 6–7. The Government makes no effort to rebut Petitioner's contention that she was given no opportunity to contest the reasons for her re-detention. And while the Court finds that Petitioner's conviction in Utah diminishes the risk of erroneous deprivation to an extent, her detention without any opportunity to show that she is neither a danger to the community nor a flight risk nevertheless creates a risk of arbitrary detention. *See Reyes v. Hermosillo*, No. 2:26-CV-00270-TLF, 2026 WL 507678, at *5 (W.D. Wash. Feb. 24, 2026) (find that second *Mathews* factor weighed in petitioner's favor despite "petitioner's arrest and pending charges for a crime" because "at the time of re-detention, she was not provided an opportunity to respond to the allegations that she violated her conditions of release").

Accordingly, the second *Mathews* factor favors Petitioner, albeit somewhat less strongly.

**D. The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining her, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The Government presents no argument concerning its interest in re-detaining Petitioner without a hearing.

Accordingly, the third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

## III. REMEDY

Having determined that Petitioner's arrest without a hearing violated her constitutional right to due process, the Court finds Petitioner's detention to be unlawful. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Government notes that Petitioner has not requested a bond hearing pursuant to 8 C.F.R. § 236.1(d)(1), as she is entitled to do. Dkt. No. 8 ¶ 15. For this reason and because Petitioner's conviction somewhat diminishes the risk of erroneous deprivation here, the Court finds that the appropriate remedy is for the Government to provide a bond hearing within seven days of

this order. At this hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1096 (E.D. Cal. 2025); *see also* Dkt. No. 11 at 5 (traverse arguing Petitioner "is entitled to a bond hearing immediately").

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition in part. Dkt. No. 1. The Court ORDERS that the Government shall provide Petitioner an individualized bond hearing no later than August 4, 2026, where the Government must demonstrate the justification for detention by clear and convincing evidence. The Government must create a contemporaneous record of the hearing. The Government shall file a status report no later than August 7, 2026, to confirm that Petitioner was provided the bond hearing as described in this order.

Dated this 28th day of July, 2026.

Kymberly K. Evanson
United States District Judge